**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

FRANK KRUSE, as representative of the
Estate of Jacob Jordan, deceased,        :

      Plaintiff,                :

v.                            :         CA 11-00513-KD-C

DALE BYRNE, et al.,               :

      Defendants.             :

## REPORT AND RECOMMENDATION

Pending before the undersigned for entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2, are motions to dismiss and/or motions for summary judgment as to the claims asserted in the plaintiff's second amended complaint (Doc. 75). A hearing on the pending motions was conducted on October 4, 2012.

Initially, because the plaintiff expressly represented in his written responses (*see* Docs. 87 at 2 & 88 at 2) and during the October 4, 2012 Hearing that he does not oppose dismissal of these claims, the undersigned **RECOMMENDS** that all claims asserted against Defendants Baldwin County Commission (Counts III and V, only as to the County Commission) and Dale Byrne (Counts I, II and V, only as to Byrne) be **DISMISSED WITH PREJUDICE**. Further, consistent with discussion during the October 4, 2012 Hearing, the undersigned **SHALL RESERVE A RECOMMENDATION** as to the claims against Defendant Carla Wasdin (in Counts I and II). The parties have agreed to conduct limited additional discovery as to these claims and, upon completion of that discovery, <u>and no later than **November 30, 2012**</u>, Defendant Wasdin shall file a motion for summary judgment.

Excluding the claims against the Baldwin County Commission, Dale Byrne, and Carla Wasdin, the operative, second amended complaint (Doc. 75) asserts two counts under federal law.  In Count I of his complaint, the plaintiff asserts that employees of— including nurses employed by—the Baldwin County Corrections Center,[1] "acting under color of state law within the meaning of 42 U.S.C. § 1983, were deliberately indifferent to Jacob Jordan's serious medical needs" (Doc. 75, ¶¶ 36).  The complaint further asserts four state-law counts: in Count IV, the plaintiff asserts a medical malpractice claim against Defendant Charles E. Sherman, M.D; in Count V, the plaintiff asserts a wrongful death claim against all defendants; and in Counts VI and VII, the plaintiff asserts a medical malpractice claim against Defendants May and Williams (Count VI) and Defendant Pimperl (Count VII).

Excluding relief as to the claims against the Baldwin County Commission, Dale Byrne, and Carla Wasdin, the defendants are seeking the following:

- Defendants May and Williams:  dismissal of Count I (due to qualified immunity) and dismissal of Counts V and VII (due to absolute immunity) (*see* Docs. 64, 82, 83, 89, and 91);

- Defendant Pimperl:  dismissal of Count I (due to qualified immunity) and dismissal of Counts V and VIII (due to absolute immunity) (*see id.*);

- Defendants Langham, Pinkard, Drinkard, and Scott:  dismissal of Count I (due to qualified immunity) and dismissal of Count V (due to absolute immunity) (*see* Docs. 64, 84, 85, 89, and 91); and

- Defendant Sherman:  dismissal of Count IV and Count V (*see* Docs. 46, 47, 63, 65, 86, and 90).

---

[1]     The plaintiff asserts that Defendants Kenneth May and Jimmie Williams are licensed practical nurses (*see id.*, ¶¶ 7 & 9); he asserts that Defendant Johanna Pimperl is a registered nurse (*see id.*, ¶ 8); and he further asserts that Defendants Rocky Langham, Gregory Pinkard, Steve Drinkard, and Edward Scott were all employed at the Baldwin County Corrections Center (*see id.*, ¶¶ 10-13), presumably as officers.

And after consideration of the parties' submissions, the pleadings in this matter, and the arguments of the parties presented at the October 4, 2012 Hearing, the undersigned **FURTHER RECOMMENDS** that Count I only as to Defendants Langham, Pinkard, Drinkard, and Scott be **DISMISSED WITH PREJUDICE** and that the pending motions to dismiss be otherwise **DENIED**.

### A.     *Qualified Immunity (Federal Claim)*

Seven individual state employees (Defendants May, Williams, Pimperl, Langham, Pinkard, Drinkard, and Scott) seek dismissal of the federal-law claim in the operative complaint (Count I) on the basis that they are entitled to qualified immunity.[2]

> A complaint is subject to dismissal under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery on the claim.  *Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc).  "Once the affirmative defense of qualified immunity is advanced . . . [u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."  *Id.* (internal quotation marks omitted).  Absent such allegations, "[i]t is . . . appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage."  *Gonzalez v. Reno*, 325 F.3d 1228, [1233] (11th Cir. 2003).  Thus, if the defendants in this case are entitled to qualified

---

[2]     In determining whether two police officers were entitled to qualified immunity on a claim of unreasonable search in violation of the Fourth Amendment, the Supreme Court recently stated,

> "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Ashcroft v. al-Kidd*, 563 U.S. ____, ____, 131 S. Ct. 2074, 2085 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken."  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citation omitted).

*Messerschmidt v. Millender*, ___ U.S. ____, 132 S. Ct. 1235, 1244-45 (2012) (citations modified).

immunity, then their Rule 12(b)(6) motion to dismiss[, as to those claims,] must be granted[.]

*Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003).[3]  Further, as the Eleventh Circuit has explained,

> "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities ***unless*** their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez*, 325 F.3d at 1233 (quoting *Hope v. Pelzer*, 536 U.S. 730, [731] (2002)); *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).  To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority.  *Gonzalez*, 325 F.3d at 1234 (citing *Vinyard*, 311 F.3d at 1346).

*Id.* at 1357-58 (emphasis added).  Here, these seven defendants assert (*see* Docs. 83 at 12-13 & 85 at 15-16), and the plaintiff does not appear to contest (*see, e.g.*, Doc. 64 at 9), that they were acting within their discretionary authority.  Therefore, the burden shifts to

---

[3]      Here, the plaintiff's original (three-page) complaint (Doc. 1) only asserted claims against Defendants Byrne and Wasdin.  The defendants chose to answer that complaint (Doc. 2), and therein raised the affirmative defenses of qualified immunity (as to the § 1983 claims) and absolute and State-Agent immunity (as to the state wrongful death claims) (*see id.* at 4).  Because the defendants chose to answer, the Court granted their motion to limit discovery (Doc. 6) and ordered discovery focused on the defendants' right to immunity (*see generally* Doc. 15).  *See also Zion v. Nassan*, 727 F. Supp. 2d 388, 404 (W.D. Pa. 2010) ("Even in applying the *Iqbal* standard, [at least one court of appeals] has warned that 'it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases.'") (quoting *Newland v. Reehorst*, 328 Fed. App'x 788, 791 n.3 (3d Cir. May 12, 2009) (per curiam)).  This Court's decision to order limited discovery focused on the defendants' right to immunity from suit recognized the inherent tension between the need to sufficiently develop the factual record and the requirement that a court "protect[] the substance of the qualified immunity defense."  *Crawford-El v. Britton*, 523 U.S. 574, 597 (1998); *see, e.g., Thomas v. Independence Township*, 463 F.3d 285, 300 (3d Cir. 2006) ("In order to provide government officials the protections afforded by qualified immunity, a district court must avail itself of the procedures available under the Federal Rules to facilitate an early resolution of the qualified immunity issue.  As the Supreme Court has admonished, albeit in the context of unconstitutional-motive cases against public officials, 'the trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense . . . so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings.'") (quoting *Crawford-El*, 523 U.S. at 597-98); *compare id., with Atlanta Indep. Sch. Sys. v. S.F ex rel. M.F.*, Civil Action No. 1:09-CV-2166-RWS, 2011 WL 721488, at *10 (N.D. Ga. Feb. 22, 2011) (denying motion for protective order seeking bifurcation and/or limitation of discovery to the issue of whether defendant was entitled to official immunity because "there [was] a large amount of overlap between the evidence necessary to prove Stokes is entitled to official immunity and the evidence necessary to prove that she is liable for the tort").

the plaintiff to show that they are not entitled to qualified immunity.  *See Cottone*, 326

F.3d at 1358 (citing *Vinyard*, 311 F.3d at 1346).

> [And, t]he Supreme Court has established a two-part test to determine the applicability of qualified immunity.  "The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation."  *Hope*, [536 U.S. at 736].  If, ***under the plaintiff's allegations***, the defendants would have violated a constitutional right, "the next, sequential step is to ask whether the right was clearly established."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

*Id.* (citation modified and emphasis added).

Initially this two-step inquiry was sequential, *see id.*, and "[w]hile it may often be

appropriate to conduct the qualified immunity analysis by first determining whether a

constitutional violation occurred and then determining whether the constitutional right

was clearly established, that ordering of the analytical steps is no longer mandatory[,]"

*Starling v. Board of County Comm'rs*, No. 08–80008–CIV, 2009 WL 281051, at *6 n.4 (S.D.

Fla. Feb. 2, 2009).  Instead, "the district court retains discretion to decide which of these

two prongs should be addressed first in light of the circumstances of the particular

case."  *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236-37 (2009) ("Although we now

hold that the *Saucier* protocol should not be regarded as mandatory in all cases, we

continue to recognize that it is often beneficial. . . .  At the same time, however, the rigid

*Saucier* procedure comes with a price.  The procedure sometimes results in a substantial

expenditure of scarce judicial resources on difficult questions that have no effect on the

outcome of the case.  There are cases in which it is plain that a constitutional right is not

clearly established but far from obvious whether in fact there is such a right.  District

courts and courts of appeals with heavy caseloads are often understandably

unenthusiastic about what may seem to be an essentially academic exercise.")).  Here,

because the Court must consider the complaint's allegations as to each individual

defendant separately, it makes more sense to first determine whether the right allegedly violated (by all individual these defendants) was clearly established.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [defendant] that his [or her] conduct was unlawful in the situation he [or she] confronted[,]" *Cottone*, 326 F.3d at 1359 (quoting *Vinyard*, 311 F.3d at 1350 (quoting, in turn, *Saucier*, 533 U.S. at 202)), and, "[i]n making this inquiry, "the salient question . . . is whether the state of the law . . . gave [a defendant] fair warning that [his or her] alleged [conduct] was unconstitutional[,]" *id.* (quoting *Hope*, 536 U.S. at 731); *see also McDaniel v. Yearwood*, Civil Action No. 2:11–CV–00165–RWS, 2012 WL 526078, at *13 (N.D. Ga. Feb. 16, 2012) ("A constitutional right is clearly established 'only if its contours are sufficiently clear that a reasonable official would understand what he is doing violates that right.'") (quoting *Vaughan v. Cox*, 316 F.3d 1210, 1212 (11th Cir. 2003) (quoting, in turn, *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (internal quotation marks omitted)); *Starling*, 2009 WL 281051, at *6 ("For a right to be 'clearly established,' controlling precedent must recognize the right in a 'concrete and factually defined context.'") (quoting *Chesser v. Sparks*, 248 F.3d 1117, 1122 (11th Cir. 2001) (citing, in turn, *Lassiter v. Ala. A&M Univ., Bd. of Trs.*, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc))); *cf. Dukes v. Miami-Dade County*, 232 Fed. App'x 907, 911 (11th Cir. May 10, 2007) (per curiam) ("[O]nly Supreme Court cases, Eleventh Circuit caselaw, and [state] Supreme Court caselaw can clearly establish law in this circuit.") (quoting *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003)).

At this stage, because these defendants are asserting their right to the affirmative defense of qualified immunity through motions to dismiss, qualified immunity attaches only if the "complaint fails to allege a violation of a clearly established constitutional

right." *Santamorena v. Georgia Military College*, 147 F.3d 1337, 1340 (11th Cir. 1998) (quoting *Williams v. Alabama State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997)); *accord Dukes*, 232 Fed. App'x at 911 ("If a defendant asserts a qualified immunity defense in a Rule 12(b)(6) motion to dismiss, the court should grant qualified immunity if the plaintiff's complaint fails to allege a violation of a clearly established constitutional or statutory right.") (quoting *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1300 (11th Cir. 2007)); *Tariq v. Chatman*, No. 1:11–CV–159 (WLS), 2012 WL 3637386, at *5 (M.D. Ga. July 18, 2012) ("In the context of the defense of qualified immunity asserted on a 12(b)(6) motion to dismiss, there must be a failure by the plaintiff to set forth a clearly established constitutional violation in order for the protection of qualified immunity to attach."), *report & recommendation adopted*, 2012 WL 3637729 (M.D. Ga. Aug. 22, 2012).  And when, as here, a defendant asserts that a constitutional claim should be dismissed **both** because he or she is entitled to qualified immunity **and** because the plaintiff has failed to state a claim, the Court may collapse those two theories and consider them together at this stage.  *Cf. Hill v. Dekalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1186 (11th Cir. 1994) (A "finding of deliberate indifference necessarily precludes a finding of qualified immunity.").

As stated above, in Count I, the plaintiff asserts that, along with Byrne and Wasdin, Defendants May, Pimperl, Williams, Langham, Pinkard, Drinkard, and Scott, "acting under color of state law within the meaning of 42 U.S.C. § 1983, were deliberately indifferent to Jacob Jordan's serious medical needs related to his Addison's Disease."  (Doc. 75, ¶ 36.)  More specifically,

> [b]efore Jacob Jordan died shortly after midnight on July 9, 2010, [the applicable defendants] knew that Jacob Jordan suffered from Addison's Disease, knew that Jacob Jordan was becoming increasingly ill and knew that, because of the serious nature of Jacob Jordan's illness, he needed to be taken to the hospital for timely and appropriate medical treatment.  In

spite of this knowledge, and in spite [of] the repeated requests by Jacob Jordan and his mother, Peggy Jordan, that Jacob Jordan be taken to a hospital or else he might die, [the applicable defendants] with deliberate indifference failed to see that Jacob Jordan was taken to a hospital for timely and appropriate medical treatment.

(*Id.*)

"The Supreme Court has held that 'deliberate indifference to serious medical needs of prisoners[4] constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment.'" *Marsh*, 212 F.3d at 1330 (11th Cir. 2000) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting, in turn, *Gregg v. Georgia*, 428 U.S. 153, 173, (1976))). But, as will be discussed more fully below, "[i]n order to state such a claim, a[ detainee] must allege more than negligence; he must 'allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" *Id.* (quoting *Estelle*, 429 U.S. at 105).

The plaintiff must, moreover, plead a plausible claim for deliberate indifference—one that survives scrutiny under *Twombley/Iqbal*—against each defendant alleged to have acted with deliberate indifference to Jacob Jordan's serious medical needs. *See, e.g., Robinson v. Correctional Med. Assocs., Inc.*, Civil Action No. 1:09–cv–01509–JOF, 2010 WL 2499994, at *2 (N.D. Ga. June 15, 2010) ("On a motion to dismiss, the court must accept the facts alleged in the complaint as true. However, a complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its

---

[4] "As a pre-trial detainee, [Jordan's] rights exist under the due process clause of the Fourteenth Amendment rather than the Eighth Amendment." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306 (11th Cir. 2009) (citing *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)). Count I is, nevertheless, "subject to the same scrutiny as if [it] had been brought as [a] deliberate indifference claim[] under the Eighth Amendment." *Id.* (citing *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985) ("[I]n regard to providing pretrial detainees with such basic necessities as . . . medical care[,] the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons.") (footnote omitted); *accord Lancaster v. Monroe County*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997).

face.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561–62, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).[5]  Importantly, "[t]he plausibility standard is not akin to a probability requirement[.]"  *Iqbal*, 556 U.S. at 678 (internal citations and quotation marks omitted).  It does, however, "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see id.* ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.") (internal citations and quotation marks omitted).  Therefore, "[a]lthough a summary judgment motion may result in a different conclusion," to dismiss a defendant from Count I at this stage, the Court must conclude "that the plaintiff has failed to present more than a 'sheer possibility' that [that] defendant[] acted [with deliberate indifference to the decedent's serious medical needs]."  *Mackey v. Donald*, No. 1:08–CV–46 (WLS), 2010 WL 1374983, at *3 (M.D. Ga. Jan. 7, 2010) (citation omitted), *report & recommendation adopted*, 2010 WL 1416469 (M.D. Ga. Mar. 31, 2010).

Further, to be an actionable ***constitutional*** violation, the basis for the deliberate indifference claim may not be more akin to a claim for medical malpractice or a violation of state tort law, which—it is worth pointing out—are both alleged in the operative complaint.  *See Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (The "inadvertent or negligent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain."); *Loeber v. Andem*, No. 11–

---

[5]     *Compare id.* ("Factual allegations in a complaint need not be detailed but 'must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'") (quoting *Twombly*, 550 U.S. at 555 (internal citations and emphasis omitted)), *with Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1381 (11th Cir. 2010) ("[G]iven the pleading standards announced in *Twombly* and *Iqbal*, [a plaintiff] must do more than recite [] statutory elements in conclusory fashion.  Rather, his allegations must proffer enough factual content to 'raise a right to relief above the speculative level.'").

11870, 2012 WL 3590745, at *1-2 (11th Cir. Aug. 22, 2012) (per curiam) ("Inadvertent failure to provide adequate medical care, negligence in diagnosis or treatment, or medical malpractice, without more, fails to state a cognizable deliberate indifference claim.") (citing *Estelle*, 429 U.S. at 105-06); *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *McElligott v. Foley*, 182 F.2d 1248, 1255 (11th Cir. 1999) (noting that not every claim of inadequate medical treatment states a violation of the Eighth Amendment).  Moreover, when, like here, a detainee receives some medical treatment, determining the line between mere medical malpractice or negligence or gross negligence **and** deliberate indifferent is not as clear as when a detainee receives no medical treatment.  *Cf. Fields v. Prison Health Servs., Inc.*, No. 2:09–cv–529–FtM–29DNF, 2011 WL 864905, at *5 (M.D. Fla. Feb. 14, 2011) ("Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable.") (citations omitted).

- As such, to violate the Eighth Amendment, the medical treatment received by the detainee must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir.1991).

- Treatment that is so cursory as to amount to no treatment at all rises to the level of deliberate indifference.  *See Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989) ("When the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference."); *accord Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment.") (quoting *Ramos v. Lam*, 639 F.2d 559, 575 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041 (1981)).

- Deliberate indifferent medical treatment also may be shown by "grossly inadequate care" or a "decision to take an easier but less efficacious course of treatment," *Fields*, 2011 WL 864905, at *5 (citing *Steele v. Shah*, 87 F.3d 1266, 1269–70 (11th Cir. 1996) (recognizing, "In this circuit, it is established that psychiatric needs can constitute serious medical needs and that the quality of psychiatric care one receives can be so substantial a deviation from accepted standards as to evidence deliberate indifference to those serious psychiatric needs.") (citations omitted); *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989)); *see Waldrop*, 871 F.2d at 1033 ("Grossly incompetent or inadequate care can constitute deliberate indifference as can a doctor's decision to take an easier and less efficacious course of treatment.") (internal citation omitted).

- Differences in opinion between jail officials and a detainee (or his family) as to the course of treatment, however, will not support an Eighth Amendment claim. *See id.* ("[A] simple difference in medical opinion" does not constitute deliberate indifference.); *see also Loeber*, 2012 WL 3590745, at *1-2 (affirming district court's conclusion that the plaintiff's deliberate indifference allegations—that the defendants' decision not to ignore his Hepatitis C but, instead, to treat it differently than as prescribed by his doctor—while possibly stating a claim for negligence, were "merely consistent" with liability and stopped "short of the line between possibility and plausibility") (citations omitted).

- Moreover, whether government actors should have employed additional forms of treatment is a matter of medical judgment and also will not support an Eighth Amendment claim. *See, e.g., Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("We must[ ] reverse the district court's denial of summary judgment as to Dr. Carmichael because, as *Estelle* teaches, the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (quoting *Estelle*, 429 U.S. at 107).

- Finally, "an error in judgment, mere negligence or a mistake in judgment does not rise to the level of deliberate indifference," *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1308 (11th Cir.2009), which means the fact that a detainee was harmed, "without more, cannot carry the burden required for deliberate indifference[,]" *id.*

Without forgetting these distinctions, the Court turns to a threshold issue: initially, it must be alleged that the detainee had an objectively serious medical need. *See, e.g., Evans v. St. Lucie County Jail*, 448 Fed. App'x 971, 976 (11th Cir. Dec. 13, 2011) (per curiam) ("[A] plaintiff must allege 'an objectively serious medical need, one that, if

left unattended, poses a substantial risk of serious harm.'") (quoting *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000)); *accord Farrow*, 320 F.3d at 1243. "A medical need is [also] 'serious' if it is one that 'a physician has diagnosed as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Lee v. Johnson*, No. 3:12–CV–112 JD, 2012 WL 1430939, at \*2 (N.D. Ind. Apr. 23, 2012) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). And the allegation that Jacob Jordan died from complications of his Addison's disease[6] (*see, e.g.*, Doc. 75, ¶¶ 4, 16, and 27-28), which the defendants do not appear to contest, satisfies the requirement that the plaintiff allege an objectively serious medical need, *see, e.g.*, *Rothschild ex rel. Rothschild v. Ahmed*, No. 2:09–cv–112, 2010 WL 749923, at \*2 (S.D. Ohio Feb. 22, 2010) (applying *Iqbal* and finding that it was plausible that the decedent's "Eighth Amendment rights were violated due to deliberate indifference" because, in part, a "sufficiently serious medical need [was] demonstrated by [his] death").

Next, turning to Jacob Jordan's treatment at the corrections center, it is generally alleged that the detainee and his mother explained his situation on multiple occasions to multiple defendants, those warnings were not adequately headed, and, as a result, the detainee died, ***but*** the plaintiff must adequately allege that ***_each_*** defendant acted with an attitude of deliberate indifference to the decedent's serious medical need. Put

---

[6]    As the Eleventh Circuit has noted, "[p]eople with Addison's disease must take medications daily or risk serious health problems, including death." *Williams v. Arnold*, 207 Fed. App'x 980, 981 (11th Cir. Nov. 28, 2006) (per curiam). In *Williams*, the Eleventh Circuit noted that this Court (Magistrate Judge Bivins) made a conclusion (which Judge Hand adopted) "that the existence of a serious medical need was not established merely by Williams' diagnosis with Addison's disease. Instead, . . . the relevant inquiry was whether Williams' condition during the time he went without medication constituted a serious medical need." *Id.* at 984. In affirming this Court's decision, the Eleventh Circuit did not "determine the correctness [of] that determination because [the plaintiff] failed to create a genuine issue of material fact about the subjective component." *Id.*

differently, it must be shown that ___each___ defendant made an "objectively insufficient response" to the "objectively serious medical need[,]" *Loeber*, 2012 WL 3590745, at *1, and such a response "must be poor enough to constitute an unnecessary and wanton infliction of pain[,]" *id.*  The plaintiff must further establish that ___each___ defendant had a "subjective awareness of the facts signaling [a serious medical] need" and possessed "an actual inference of required medical treatment from those facts."  *Id.* (citing *Taylor*, 221 F.3d at 1258).  Thus, taking the allegations of the operative complaint as true, the Court's task is to isolate the allegations pertaining to a particular defendant and determine whether the plaintiff has sufficiently alleged that that defendant had subjective awareness of facts signaling that Jacob Jordan needed medical treatment because of his Addison's disease, possessed an actual inference that Jacob Jordan required medical treatment, and then made an objectively insufficient response to Jacob Jordan's condition.  *See Milton v. Turner*, 445 Fed. App'x 159, 162 (11th Cir. Aug. 19, 2011) (per curiam) ("Whether the defendants acted with deliberate indifference is a subjective inquiry.  Each defendant is 'judged separately and on the basis of what that person knows.'") (quoting  *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008)) (other citation omitted); *Martinez v. Burns*, 459 Fed. App'x 849, 851 (11th Cir. Mar. 1, 2012) (per curiam) ("[T]o state a claim for deliberate indifference under § 1983, there must be a causal connection between the constitutional violation and the state actor's conduct.") (citing *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (requiring "proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation")).

### 1.     *Defendants May, Pimperl, and Williams*

The following allegations pertain to Nurses May, Pimperl, and Williams (collectively, the "Nurse Defendants"):

**May:**  The decedent's mother "discussed [his] illness with Defendant May" on July 6, 2010, the date on which she allegedly told officials at the corrections center, in person and over the telephone, that her son "was very ill from his Addison's Disease and that he needed to go to a hospital or else he would die."  (Doc. 75, ¶ 19.)

**Pimperl:**  A July 8, 2010, 9:00 a.m. nurses note from Defendant Pimperl, in which she indicates that the decedent has Addison's disease, states that the decedent told her, "I feel like I'm going to pass out.  I am so weak.  I have to 90 days here and if I keep on like this you will have to send me to the hospital."  That same note also indicates that Defendant Pimperl telephoned Dr. Sherman, "who ordered that Jacob Jordan be given Gatorade and Prednisone, but did not order any blood tests."  (*Id.*, ¶ 20.)

**Williams:**  The complaint contains more extensive allegations related to Defendant Williams.  First, it is alleged that the decedent's mother telephoned the corrections center more than once after 2:30 on July 8, 2010, "for the purpose of reiterating her point that Jacob Jordan was very ill and needed to be taken to a hospital or else he would die," and "[d]uring one or more of those telephone conversations, [she] discussed [her son's] illness with Defendant Williams."  (*Id.*, ¶ 21.)  Next, Defendant Williams allegedly authored several nurse's notes in the decedent's chart on July 8, 2010.  The first, at 4:00 p.m., "stated that [he] was found lying supine on the floor and a Code Blue was called and that [he] then stated: 'I passed out.' 'I need to go to the hospital.' 'When I was at Metro[7] they sent me to the hospital and gave me IV fluids.' 'I

---

[7]     The complaint alleges that, on July 2, 2010, the decedent, while at Mobile County Metro Jail, "began suffering from some complications associated with his Addison's Disease and [ ] was taken to a hospital and given medical treatment."  (*Id.*, ¶ 18.)  On that same day, he "left the hospital in Mobile and was transferred to the Baldwin County Corrections Center[.]" (*Id.*)

feel worse now than then.'" (*Id.*, ¶ 22.)  Another, at 4:30 p.m., stated that the decedent's "mother had telephoned and said: 'My son needs to go to a hospital.'" (*Id.*, ¶ 23.)  The next, at 6:30 p.m., stated:

> Received call from M [Block] officer that inmate was throwing up now, moaning and needed to go to the hospital!! [Verbal Order] Dr. Sherman okay to give Phenergan 25 mg. IM [times] once.  Clear liquids tonight (chicken broth) (kitchen provided) Took inmate 2 styrofoam cups of warm broth.  Inmate lying on mat on floor.  Stated "I've never felt this bad."  "I'm dehydrated."  Encouraged inmate to sip liquids only.  Informed him that I had a Phenergan shot to give him for his nausea and vomiting.  He asked if I was going to "give it in the vein?"  Inmate is thin and tall.  Injection given in [right] deltoid.  Tolerated well.  Few sips of broth given.  Encouragement given!"

(*Id.*, ¶ 24.)  An hour later, at 7:30 p.m., the decedent's mother telephoned the corrections center again, "at which time she spoke to Defendant Williams, who refused to give [her] any information concerning [her son's] condition.  During that conversation, Peggy Jordan again told Defendant Williams that Jacob Jordan was very ill, and that he needed to go to a hospital or he would die." (*Id.*, ¶ 25.)  And in the last nurse's note, made at 9:45 p.m., Defendant Williams wrote, "Went to M [Block].  Inmate lying in floor on mat.  Pulled blanket up and closed his eyes.  Hopefully going back to sleep.  No further complaints of [nausea and vomiting] voiced." (*Id.*, ¶ 26.)

According to the complaint, Jacob Jordan was found not to be breathing in the early morning hours of July 9, 2010, and although corrections center staff took measures to resuscitate him, he died shortly thereafter at the corrections center.  (*See id.*, ¶ 27.)

Based on these alleged facts, the plaintiff claims that the Nurse Defendants acted with deliberate indifference, in violation of the Eighth Amendment, to the medical needs of Jacob Jordan: they knew (1) he suffered from Addison's disease; (2) he recently received treatment at a hospital for complications from his Addison's disease while incarcerated at Metro; (3) it was his, and his mother's, belief that he was becoming

increasingly ill from his Addison's disease and needed treatment at a hospital, and, although he was provided with some treatment, the Nurse Defendants failed to see that Jordan was taken to the hospital.  And applying the cases outlined above, it cannot be said that the plaintiff has failed to plead a plausible claim for deliberate indifference against the Nurse Defendants, *see Robinson*, 2010 WL 2499994, at *2; the plaintiff has alleged more than a "sheer possibility" that the Nurse Defendants acted with deliberate indifference to the decedent's serious medical needs, *see Mackey*, 2010 WL 1374983, at *3.

First, the alleged facts outlined above are sufficient to satisfy that all three Nurse Defendants had, one, subjective awareness—based on warnings from either the decedent or his mother (or both) regarding his condition—that Jacob Jordan was experiencing complications from his Addison's and, two, formed an actual inference that Jacob Jordan required medical treatment, as exhibited by the fact that Dr. Sherman was contacted and Jordan received some medical assistance.  *See Taylor*, 221 F.3d at 1258.  Next, because the Court has already shown that the first element needed to sustain a claim for deliberate indifference—an objectively serious medical need—has been alleged, *see supra*, it must only be shown now that the plaintiff has alleged that the Nurse Defendants' response/the medical treatment received by Jordan at the Baldwin County Corrections was objectively insufficient, *see Taylor*, 221 F.3d at 1258, and the plaintiff has accomplished that, *see, e.g., Harris*, 941 F.2d at 1505 (gross inadequate medical treatment violates the Eighth Amendment); *Mandel*, 888 F.2d at 789 ("When the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference."); *Waldrop*, 871 F.2d at 1033 ("[A] doctor's decision to take an easier and less efficacious course of treatment" can constitute deliberate indifference.).

It cannot be overemphasized, however, that this result is driven by the standard to be applied to the Nurse Defendants' motions to dismiss.  *See Mackey*, 2010 WL 1374983, at *3 (denying motion to dismiss but noting that "a summary judgment motion may result in a different conclusion"); *cf. Rosado v. Alameida*, 497 F. Supp. 2d 1179, 1194 (S.D. Cal. 2007) (where inmate died from liver failure, denying medical officials' motion for summary judgment on qualified immunity as to deliberate indifference, and noting, "[i]t may be true that a resolution of the factual issues may well relieve the prison officials of any liability in this case[, but] *Saucier* instructs the Court at this stage of the proceedings to presume the Plaintiff's version of events as true") (internal quotation marks and citations omitted).   While it is certainly proper to address qualified immunity at the motion to dismiss stage, as counsel for the Nurse Defendants conceded at the October 4, 2012 Hearing, cases with facts similar to this one in which a court granted qualified immunity at the motion to dismiss stage are scarce.   And, in this regard, *Robinson v. Correctional Medical Associates, Inc.*, Civil Action No. 1:09–cv–01509–JOF, 2010 WL 2499994 (N.D. Ga. June 15, 2010), where a detainee's condition worsened after he was given some care for his condition—care he alleged was inadequate, to the point of being a constitutional violation—and the court denied a motion to dismiss on qualified immunity, is instructive:

> Defendants concede that diabetes is a serious medical need.  Defendants argue, however, that even under the facts alleged in Plaintiff's complaint, they were not deliberately indifferent because Plaintiff received some kind of medication, just allegedly not the right kind.  ***At the motion to dismiss stage, the court finds that Plaintiff sufficiently pled a claim for deliberate indifference to medical needs.***  Plaintiff alleges that he specifically told medical personnel at the jail that he required a particular type of medication and that he would become seriously ill if he did not receive this medication.  Further, Plaintiff states that upon receiving the improper medication, his condition deteriorated enough that he required hospitalization.  While it is true that mere disagreements about medical treatment are not actionable under § 1983, it is not clear to the court from the face of Plaintiff's complaint that this was simply a disagreement about

17

> selection of medication.  Plaintiff alleges that the treatment he received at
> the jail led to his hospitalization.  At the motion to dismiss stage, the court
> finds this is sufficient.

*Id.* at *3 (emphasis added).  Like in *Robinson*, it is alleged here that the detainee (and his mother) specifically told medical personnel at the corrections center that he needed specific medical care and, upon the correction center's failure to provide that specific medical care, his condition deteriorated—the detainee in *Robinson* required hospitalization; Jacob Jordan died.  *Cf. Estate of Carter v. City of Detroit*, 408 F.3d 305, 313 (6th Cir. 2005); *Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) (respectively affirming a denial of summary judgment and reversing a grant of summary judgment on qualified immunity/deliberate indifference to a serious medical need where a pretrial detainee was not transported to the hospital for treatment).[8]

### 2.   *Defendants Langham, Pinkard, Drinkard, and Scott*

The following allegations pertain to Defendants Langham, Pinkard, Drinkard, and Scott:

- While the complaint lacks factual allegations pertaining to Defendants Langham and Drinkard, the plaintiff has asserted (*see* Doc. 64 at 15-16 &

---

[8]   In *Carter*, the Sixth Circuit noted,

> In most cases in which the defendant is alleged to have failed to provide treatment, there is no testimony about what inferences the defendant in fact drew.  Nonetheless, in those cases, a genuine issue of material fact as to deliberate indifference can be based on a strong showing on the objective component.  For example, in a recent case, *Garretson v. City of Madison Heights*, a panel of this court held that where one named and one unnamed officer were told by the plaintiff pre-trial detainee that she was a diabetic in need of insulin, and was past due for her next dose, a genuine issue of material fact existed as to whether the two acted with deliberate indifference to her medical needs in failing to have her transported to the hospital.  Carter's situation was similar, because, taking the facts as the Estate alleged, Hollins was both directly informed by Tori Carter that she was in distress and was informed by Officer Carter that she was experiencing chest pains, had not taken her "heart" medication, and needed to go to the hospital.

408 F.3d at 313.

Ex. B), that either Langham or Drinkard were the "M [Block] officer" that informed Nurse Williams "that inmate was throwing up now, moaning and needed to go to the hospital!!" (as alleged in Nurse Williams's July 8, 2010, 6:30 p.m. note, Doc. 75, ¶ 24).

- "Peggy Jordan told [an unnamed] on-duty guard . . . that [her son] was very ill from his Addison's Disease and that he needed to go to a hospital or else he would die."  (*Id.*, ¶ 19.)

- During her visit to see her son on the afternoon of July 8, 2010, "Peggy Jordan called out to a guard, who was either Defendant Scott or Defendant Pinkard and told him that Jacob Jordan was very ill and needed to go to a hospital, and that if he did not go to a hospital he would die."  (*Id.*, ¶ 21.)

These factual allegations fail to establish that these defendants acted with deliberate indifference to Jacob Jordan's serious medical condition.  First, importantly, this is not a deliberate indifference case in which it is alleged that no medical care was provided[9] or one where an inference can be drawn that the medical care claimed to

---

[9]       For example, in *Lancaster v. Monroe County, Alabama*, 116 F.3d 1419 (11th Cir. 1997), another jail death case, the Eleventh Circuit, in reversing this Court's grant of summary judgment to jail employees on the ground of qualified immunity, noted that

> [a]fter reviewing the evidence in the light most favorable to Ms. Lancaster, we agree with her that a reasonable jury could find that each of the defendants knew that Lancaster had an urgent medical condition.  Furthermore, we agree that a jury could find that each of the defendants planned to keep Lancaster in jail *without medical supervision or treatment* until he had a seizure, even though the defendants should have known from the clearly established law that such conduct amounted to deliberate indifference.

*Id.* at 1426 (emphasis added); *see also Haas v. Schimke*, No. 05C0785, 2010 WL 2757327, at *2-4 (E.D. Wis. July 13, 2010) ("[T]aking plaintiff's statements as true, as I must for purposes of this motion, a reasonable jury could find that Murray and Garcia acted with deliberate indifference to plaintiff's health *by failing to take any steps whatsoever* to determine whether plaintiff's complaints of pain required medical attention. . . . A reasonable jury could find plaintiff's allegations relating to Wilson credible and conclude that Wilson also acted with deliberate indifference to plaintiff's health by *ignoring* his medical complaints. . . .”); *Blount v. Johnson*, No. Civ.A. 705CV00556, 2006 WL 335606, at *3 (W.D. Va. Feb. 14, 2006) ("The plaintiff further alleges that he received '*zero medical care*,' even though he repeatedly told Moore, Fields, McClean, and Day that he was sick.  At this time, the court cannot conclude that the plaintiff's allegations are insufficient to survive the court's *sua sponte* review.  Therefore, the court will not dismiss the plaintiff's third claim, to the extent that he alleges that Moore, Fields, McClean, and Day acted with deliberate indifference to his medical needs.") (emphases added and citations omitted).

have been provided was not actually provided.[10]  Thus, the plaintiff's theory as to these defendants' deliberate indifference appears to be that when correction center medical personnel are aware of a detainee's serious medical condition and have undertaken some effort to address that condition—even if such effort is alleged to be constitutionally deficient—the correction center's non-medical personnel have an independent duty to provide better medical care to the detainee (which would have meant here, presumably, transporting the detainee to a hospital for treatment). However, to establish that the non-medical personnel violated the decedent's constitutional rights, the plaintiff must show that "it would be clear to a reasonable [defendant in such a situation] that such conduct[—failing to independently obtain medical treatment, other than the treatment being provided by the correction center's medical staff, for a detainee—]was unconstitutional."  *Cottone*, 326 F.3d at 1359.  And the plaintiff has failed to point the Court to a case (and the Court is not aware of one), much less controlling authority in the Eleventh Circuit,[11] that has held that, under such facts (where medical personnel are aware of, and attempting to treat, a detainee's

---

[10]      *See Kelly v. Owens*, Civil Action No. 2:05cv1150-MHT, 2006 WL 3496652, at *7-9 (M.D. Ala. Dec. 4, 2006) (denying motion to dismiss deliberate indifference to medical claim against sheriff where it was alleged that sheriff possessed actual knowledge or awareness of detainee's extensive medical history, "which included a bipolar mental disorder for which he had recently been treated and remained under medication, and his dependence on medications, without which he would suffer seizures," and the defendant suffered seizures, "which were observed by defendants and resulted in a mental health evaluation, which resulted in professional advice that Kelly 'needed an evaluation by a doctor for the seizures'"; court rejected sheriff's argument that "the act of securing a mental health evaluation [and providing medications and medical attention for his falls] . . . is inconsistent with any 'deliberate indifference'" and noted, "[i]n the category of failing to abate indicated risks, the Complaint alleges that the Sheriff did not act on the recommended 'evaluation by a doctor for the seizures' and that Kelly's seizures continued at least to December 5—***triggering a reasonable inference that Kelly did not receive the medications necessary to prevent them, as the Sheriff had been warned***") (emphasis added and citations omitted).

[11]      "[O]nly Supreme Court cases, Eleventh Circuit caselaw, and [state] Supreme Court caselaw can clearly establish law in this circuit."  *Dukes*, 232 Fed. App'x at 911.

serious medical condition), the non-medical personnel should be aware that their conduct (again, presumably, failing to provide independent medical care to the detainee) is unlawful.  *See id.* ("to determine whether a right is clearly established," it must be clear to a reasonable defendant that his or her conduct was unlawful in a given situation); *Evans v. Stephens*, 407 F.3d 1272, 1282 (11th Cir. 2005) (en banc) (ruling that a law is clearly established only if it "dictates, that is, truly compels, the conclusion for all reasonable, similarly situated public officials that what Defendant was doing violated Plaintiffs' federal rights in the circumstances" (internal quotation marks and citation omitted))[12]; *see also McDaniel*, 2012 WL 526078, at *13 (N.D. Ga. Feb. 16, 2012) (to determine whether a constitutional right is clearly established, a reasonable official must understand what he or she "is doing violates that right"); *Starling*, 2009 WL 281051, at *6 ("For a right to be 'clearly established,' controlling precedent must

---

[12]     For example, in *Andujar v. Rodriguez*, 486 F.3d 1199 (11th Cir. 2007), a panel of the Eleventh Circuit noted,

> [E]ven if we were to find Newcomb and Barea's conduct constitutionally impermissible, we would nonetheless conclude that Newcomb and Barea are shielded from civil liability under the second step of the qualified immunity analysis because their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  The state of the law at the time of Andujar's arrest in May 1999 did not give Newcomb and Barea fair warning that their alleged treatment of Andujar was unconstitutional. Andujar has not cited, and we have not found, a case holding that the Constitution requires a paramedic who has treated a detainee's immediate medical needs to transport the detainee to a medical facility for non-urgent treatment rather than release the detainee to police officers for booking, relying on the police officers to later transport the detainee for further treatment.  Thus, there was no factually similar caselaw that would have put Newcomb and Barea on notice that their conduct violated the Constitution.  Moreover, while there was caselaw establishing the general legal proposition that a government official who intentionally delays providing medical care to an inmate, knowing that the inmate has a serious medical condition that could be exacerbated by delay, acts with deliberate indifference, we cannot say that this general rule applied with obvious clarity to the specific conduct in question.  Andujar's case does not meet this test, and thus Newcomb and Barea would be entitled to qualified immunity on this ground even if their conduct were found constitutionally impermissible.

*Id.* at 1204-05 (multiple internal citations and quotation marks omitted).

recognize the right in a 'concrete and factually defined context.'"). Thus, it is recommended that the non-medical personnel defendants—Langham, Pinkard, Drinkard, and Scott—are entitled to qualified immunity as to Count I, and, accordingly, that count should be dismissed as to these defendants.

### B.   *Absolute Immunity (State Claims)*

All seven individual state employee defendants—all non-deputy employees of the Sheriff of Baldwin County, Alabama, when the events underlying this lawsuit occurred—also seek dismissal of the state-law claims, for wrongful death and medical malpractice (Counts V, VII, and VIII), asserted against them on the basis that they are entitled to absolute immunity. Dr. Sherman does not assert that absolute immunity applies to the state-law claims asserted against him.

In 2009, the Alabama Supreme Court declined to extend absolute immunity to any sheriff's employees other than deputy sheriffs. *See Ex parte Shelley*, 53 So. 3d 887, 897 (Ala. 2009). In 2011, however, Alabama legislatively expanded the applicable immunity statute to reach non-deputy sheriff employees. *See* ALA. CODE §§ 14–6–1; 36–22–3.[13] And these defendants contend that, even though the events that underlie this

---

[13]      The applicable provisions of the current versions provide:

> The sheriff has the legal custody and charge of the jail in his or her county and all prisoners committed thereto, except in cases otherwise provided by law. The sheriff may employ persons to carry out his or her duty to operate the jail and supervise the inmates housed therein for whose acts he or she is civilly responsible. Persons so employed by the sheriff shall be acting for and under the direction and supervision of the sheriff and shall be entitled to the same immunities and legal protections granted to the sheriff under the general laws and the Constitution of Alabama of 1901, as long as such persons are acting within the line and scope of their duties and are acting in compliance with the law.

§ 14-6-1, and:

> Any of the duties of the sheriff set out in subsection (a) or as otherwise provided by law may be carried out by deputies, reserve deputies, and persons employed

lawsuit occurred in 2009, prior to the amendment/legislative expansion of this immunity, because the lawsuit was not filed until after that law was changed, the 2011 version of the law applies.  (*See, e.g.*, Doc. 91 at 6 (noting that the law was amended on June 4, 2011 and the lawsuit was filed on September 7, 2011 and contending, "Because this case was filed after the statute was enacted, the immunity defense was in existence and thus available to Defendants at the time Plaintiff filed this lawsuit."); *see also id.* at 5-6 (contending that "[b]ecause Alabama sheriff's immunity is an immunity from suit, it is the initiation of a lawsuit that triggers the right to the immunity rather than the date that any tortious activity took place [and b]ecause the immunity granted to jail personnel pursuant to . . . §§ 14-6-1 and 36-22-3 derives from their sheriff's immunity to suit, it is, likewise, the initiation of the lawsuit that invokes their right to immunity")).)

There appears to be one case directly on point:  *Johnson v. Conner*, No. 2:12cv392–WHA, 2012 WL 3962012 (M.D. Ala. Sept. 10, 2012).   In *Johnson*, the Middle District of Alabama, in which the law firm representing the state employee defendants in this matter advocated the same position, decided against their theory:

> The Individual Defendants contend that the state law claims in Counts One, Two, and Three are due to be dismissed because they have the same absolute immunity to state law claims as do sheriffs, citing the court to amended Ala. Code § 14–6–1 and § 36–22–3.  They state that these sections changed Alabama law as it was stated by the Alabama Supreme Court in Ex parte Shelley, 53 So. 3d 887 (Ala. 2009).
>
> The Alabama Supreme Court has not yet applied the amended statutes. The only case which appears to have addressed the issue of immunity of sheriff's employees after the amendments became effective stated that the

---

as authorized in Section 14-6-1 as determined appropriate by the sheriff in accordance with state law.  Persons undertaking such duties for and under the direction and supervision of the sheriff shall be entitled to the same immunities and legal protections granted to the sheriff under the general laws and the Constitution of Alabama of 1901, as long as he or she is acting within the line and scope of his or her duties and is acting in compliance with the law.

§ 36-22-3(b).

"2011 amendments are not applicable in this case."  *See Ex parte Burnell*, 90 So. 3d 708, 714 n.2 (Ala. 2012).

Having been given an opportunity to address the issue, the Plaintiff urges this court to find that *Ex parte Burnell* should be read to say that the amendments did not apply in that case because they became effective after the conduct at issue.   The Plaintiff further points to the presumption under Alabama law against retroactivity of statutes in the absence of clear legislative intent.  *See, e.g., City of Brewton v. White's Auto Store, Inc.*, 362 So. 2d 226 (Ala. 1978).

The Individual Defendants contend that the statement in *Ex parte Burnell* is dicta, and may not apply here anyway because, ***while the conduct at issue in the instant case occurred before the effective date of the amendments, the Complaint was filed after the effective date.  They point out that immunity is not only from liability, but also from suit.***

As the Individual Defendants acknowledge, the applicability of a recently-enacted statute generally depends on when the incident giving rise to the claims occurred.  *See Landgraf v. USI Film Products*, 511 U.S. 244, 273 (1994).  Given that general rule, and given the presumption against retroactivity in the absence of legislative intent under Alabama law, this court interprets the Alabama Supreme Court's statement in *Ex parte Burnell*, that the 2011 amendments did not apply in that case, to mean that the recently-enacted immunity amendments do not apply to conduct which occurred before their effective date.

*Id.* at *6 (footnotes omitted).  The undersigned sees no reason to not apply this holding to this case.

During the October 4, 2012 Hearing, counsel for the defendants informed the Court that it was their plan to appeal Judge Albritton's decision in *Johnson* to the Eleventh Circuit, and, indeed, a notice of interlocutory appeal was filed in that matter on October 10, 2012 (*see* M.D. Ala. Case 2:12-cv-00392-WHA-SRW, Doc. 53).  But, as Judge Albritton acknowledged in his decision, a federal court is "bound to apply state law [to this issue], and should there be state law development on this issue[—from Alabama's courts or as directed by Eleventh Circuit—this Court] will apply it accordingly."   *Johnson*, 2012 WL 3962012, at *6 n.10.   Until then, the undersigned

recommends that the plaintiff be allowed to pursue the state law claims for wrongful death and medical malpractice against these defendants.

### C.     Dr. Sherman

No federal claims have been asserted against Dr. Sherman, but this Court has jurisdiction over the state-law claims against him pursuant to 28 U.S.C. § 1367(a), which provides,

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

*Id.*

Dr. Sherman initially moved to dismiss the claims against him pursuant to both Alabama Code § 6-5-551[14] and 28 U.S.C. § 1367(c)(4).  In his Court-ordered supplement to the original motion to dismiss (Doc. 86), Dr. Sherman

---

[14]     This provision provides:

> In any action for injury, damages, or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care, whether resulting from acts or omissions in providing health care, or the hiring, training, supervision, retention, or termination of care givers, the Alabama Medical Liability Act shall govern the parameters of discovery and all aspects of the action.  The plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts.  The plaintiff shall amend his complaint timely upon ascertainment of new or different acts or omissions upon which his claim is based; provided, however, that any such amendment must be made at least 90 days before trial.  Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted.  Any party shall be prohibited from conducting discovery with regard to any other act or omission or from introducing at trial evidence of any other act or omission.

*Id.*

submit[s] that the level of particularity provided in the [Second Amended Complaint] *probably* states the minimum pleading requirements of Ala. Code § 6-5-551, but only in reference to [his] participation in the 6:30 p.m. call.   To the extent the Plaintiff argues that [his] amendment contains allegations of negligence against [Dr. Sherman] for any acts or omissions other than those related to the [July 8, 2010,] 6:30 p.m. call, a cursory review of the relevant amendment would reveal that no such allegations are there, and to the extent general allegations are posed, any such claims remain sue to be dismissed.

(*Id.* at 2-3 (emphasis in original).)

While the operative complaint specifies that Nurse Williams received a verbal order from Dr. Sherman to provide Jacob Jordan with 25 milligrams of Phenergan at 6:30 p.m. on July 8, 2010 (*see* Doc. 75, ¶ 24), it also specifically provides that Nurse Pimperl telephoned Dr. Sherman earlier on July 8, 2010, at 9:00 a.m., and Dr. Sherman "ordered that Jacob Jordan be given Gatorade and Prednisone, but did not order any blood tests."  (*id.*, ¶ 20.)  Further, during the October 4, 2012 Hearing, counsel for the plaintiff argued—and the undersigned agrees—that other omissions related to Dr. Sherman's care of Jacob Jordan on July 8, 2010 could be inferred from the facts alleged in the complaint.  Thus, based on an objective reading of the well-pleaded complaint, it is not accurate to limit Dr. Sherman's role to a single phone call on July 8, 2012, and the undersigned recommends that both counts against Dr. Sherman, as presently pled, be allowed to proceed.[15]

Accordingly, the sole remaining ground for Dr. Sherman's motion to dismiss is that the Court should decline to assert supplemental jurisdiction over the state-law

---

[15]   Although there is no merit in dismissing these claims without prejudice under § 6-5-551, for failure to state a claim, if there was any merit to such a dismissal, granting it would also have little practical effect.  As the undersigned has signaled to the parties previously, this matter has been at the pleadings stage for far too long and needs to move forward to summary judgment.  (*See, e.g.,* Doc. 77, order regarding revised briefing in response to filing of second amended complaint (entered Aug. 7, 2012), at 1 (because the parties benefited from limited discovery as to the right to immunity, *see generally* Doc. 15, "strongly urg[ing]" the parties "to consider whether any motions already filed pursuant to Rule 12 should be converted to motions for summary judgment").)

claims against him pursuant to 28 U.S.C. § 1367(c).  He relies on the fourth, exceptional circumstances, prong—"in exceptional circumstances, there are other compelling reasons for declining jurisdiction" (§ 1367(c)(4))—and asserts that

> [t]he Alabama Legislature has recognized the obvious prejudice that would result from requiring a defendant in a medical malpractice case to explain and/or defend other care rendered at other times and to different patients under different circumstances than those acts specifically pled against him.  Implicit in this prohibition is the legislature's recognition of the fact that a mere limiting instruction would not cure the prejudice.  To try these matters together would require the jury to make a very difficult legal distinction between the elements of proof allowable in an action under § 1983 and the specific prohibitions of the AMLA.  The jury would be asked to rely on evidence of "other acts or omissions" on the one hand and exclude it from consideration entirely on the other.  The probability of juror confusion and prejudice to . . . Dr. Sherman[] in this circumstance cannot be overemphasized.

(Doc. 71 at 10.)

As Dr. Sherman points out, some federal courts have severed state-law claims on the basis of jury confusion, *see Hullett v. DeKalb County, Tenn.*, No. 2:11–0016, 2012 WL 398288, at *4 (M.D. Tenn. Feb. 7, 2012) (cited by Dr. Sherman) (finding two "exceptional circumstance[s]" for "declining supplemental jurisdiction over the negligence-based state law claims"—(1) the legislative intent that claims under the Tennessee Government Tort Liability Act (the "GTLA") be brought exclusively in state circuit court ***and*** (2) that "the theory of medical negligence [was] incompatible with plaintiff's § 1983 claim of deliberate indifference to [ ] serious medical needs . . . [has] the potential for jury confusion") (citing *Padilla v. City of Saginaw*, 867 F. Supp. 1309, 1315-17 (E.D. Mich. 1994)); *see also Alderman v. McDermott*, No. 6:03CV41ORL22KRS, 2004 WL 1109541, at *15-16 (M.D. Fla. Apr. 27, 2004) (noting that "courts in this circuit have hesitated to exercise pendent jurisdiction over state claims which would only serve to introduce jury confusion and delay") (citations omitted); *but see Lynch v. U.S. Auto. Ass'n*, 614 F. Supp. 2d 398, 404 (S.D.N.Y. 2007) (rejecting jury confusion "as sufficiently

compelling to militate in favor of the court's declining to exercise supplemental jurisdiction").[16]

This Court has "considerable discretion" in determining whether it should "delcin[e] to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(4)." *Estate of Amergi ex rel. Amergi v. Palestinian Auth.*, 611 F.3d 1350, 1366-67 (11th Cir. 2010) (citing *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1185 (11th Cir. 2003) ("[D]istrict courts can decline to exercise [supplemental] jurisdiction . . . for a number of valid reasons. Accordingly, . . . 'district courts [should] deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity . . . .'") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997) (citations omitted))). And even "[w]here a [federal] court 'dismiss[es] every claim over which it had original jurisdiction,' it retains *'pure[ ] discretion[ ]'* in deciding whether to exercise supplemental jurisdiction over the remaining claims." *Lacey v. Maricopa County*, 649 F.3d 1118, 1137 (9th Cir. 2011) (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) and noting that "the district court should have exercised its discretion and decided whether it would have been appropriate to keep

---

[16]     In *Lynch*, the court further noted

"[D]eclining jurisdiction outside the ambit of [28 U.S.C. § ] 1367(c)(1)-(3) appears as the exception rather than the rule. Thus, federal courts 'must ensure that the reasons identified as 'compelling' are not deployed in circumstances that threaten this principle.'" *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998) (citation omitted). The defendant failed to explain why the instant case represents an exceptional circumstance or why the potential for jury confusion is sufficiently compelling that it warrants the court in declining to exercise supplemental jurisdiction. A conclusory assertion of potential jury confusion, without more, does not amount to a compelling reason for declining to exercise supplemental jurisdiction over the plaintiffs' California state-law claims.

*Id.*

the state claims in federal court") (emphasis added).   Here, the federal claims "form[ing] part of the same case or controversy[,]" § 1367(a), as the claims against Dr. Sherman remain pending against some of the defendants and, moreover, the reasonableness of Dr. Sherman's conduct must be examined in concert with the conduct of the corrections center medical personnel defendants.   Thus, the undersigned finds that the principles of economy, convenience, and fairness weigh in favor of keeping the state claims against Dr. Sherman in federal court.

This finding is made mindful of Dr. Sherman's jury confusion concerns. However, as discussed at the October 4, 2011 Hearing, one of Dr. Sherman's arguments in favor of dismissal of the claims against him—that he will be prejudiced by having to "defend other care rendered at other times and to different patients under different circumstances than those acts specifically pled against him" (Doc. 71 at 10; *see* Doc. 75, ¶¶ 30-32 (regarding three other deaths, from 2001 through 2006, at the corrections center)—appears, most likely, to be moot since the plaintiff has agreed to the dismissal of Defendants Byrne and the Baldwin County Commission (and claims against Defendant Wasdin may be decided on summary judgment prior to the involvement of a jury) (*see* Doc. 75, ¶¶ 33 & 34 (asserting general allegations regarding policies and procedures and funding shortfalls)).   Based on the parties' efforts, it appears—again, more than likely—that this case will focus on the death of a single corrections center detainee and any jury will only hear evidence regarding care rendered to Jacob Jordan. If that is not the case, and assuming this matter reaches the trial by jury stage, the trial judge will have tools at her disposal to address any potential jury confusion or prejudice to Dr. Sherman.   As then-Judge (and later Attorney General) Mukasey explained in *Luongo v. Nationwide Mutual Ins. Co.*, No. 95 Civ. 3190 (MBM), 1996 WL 445365 (S.D.N.Y. Aug. 7, 1996),

"§ 1367(c)(4) . . . is a narrow [exception], because the court must find that the balance of the values of economy, convenience, fairness, and comity provide 'compelling reasons' for declining jurisdiction, and that the circumstances of the particular case are 'exceptional.'"   *See Executive Software North America, Inc. v. United States Dist. Court for the Cent. Dist. of California*, 24 F.3d 1545, 1558 (9th Cir. 1994) ("declining jurisdiction outside of subsection (c)(1)-(3) should be the exception, rather than the rule"). [Defendant] cites as a compelling reason for declining jurisdiction the potential for jury confusion on the question of damages[,] argu[ing] that jurors might not appreciate the differences in the damages available under federal and state law, and the differences in the relief plaintiff seeks against Nationwide and [Defendant].

[Defendant] overstates the danger of confusion. ***The purpose of § 1367 is to permit the litigation of different claims together, and differences in damages or theories of relief are a part of every multi-defendant, multi-claim case. There is no reason to believe that jurors in this case would not understand the explanation of relevant differences that would be provided in the jury charge.*** In fact, "[j]uries are instructed regularly on different theories of relief, even when only federal claims are present."

*Id.* at *6 (emphasis added and some citations omitted).

<u>**Conclusion**</u>

Accordingly, the Magistrate Judge **RECOMMENDS** that <u>**all claims**</u> against Defendants Baldwin County Commission and Dale Byrne be **DISMISSED WITH PREJUDICE**; that Count I as to Defendants Langham, Pinkard, Drinkard, and Scott <u>**only**</u> be **DISMISSED WITH PREJUDICE**; and that the pending motions to dismiss be otherwise **DENIED**.  Further, it is **ORDERED** that the parties complete any additional discovery as to the claims asserted against Defendant Wasdin and that Defendant Wasdin file her summary judgment motion(s) as to those claims <u>no later than</u> <u>**November 30, 2012**</u>.  The undersigned will monitor this matter (as to any orders issued by Judge DuBose on these recommendations and any interlocutory appeal of those orders) and issue subsequent orders as to scheduling and case management as necessary.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 19th day of October, 2012.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

*l.    Objection.*   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.   Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.   *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (en banc).[1]   The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in S.D. Ala. L.R. 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[2] after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.   It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.   Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

**2.    *Transcript (applicable Where Proceedings Tape Recorded).***   Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.   Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[1]        All Fifth Circuit Unit B decisions from any date are binding precedent in the Eleventh Circuit.  *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

[2]        Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"   FED. R. CIV. P. 72(b)(2).